IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 08-133-GMS |
| | ) | |
| KWADZO WATSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

**I.      INTRODUCTION**

On August 26, 2008, the Grand Jury for the District of Delaware indicted the defendant,

Kwadzo Watson ("Watson") for: (1) being a felon in possession of a firearm in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession with intent to distribute 5 grams or more of

cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and (3) possession of a firearm

in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  (D.I. 9.)

Presently before the court is Watson's motion to suppress the physical evidence seized from 2302

North Market Street, and statements made to law enforcement officers subsequent to his arrest. (D.I.

11 at 1.)  The court held an evidentiary hearing in connection with this motion on February 26, 2009.

(D.I. 14, 19.) Following that hearing, the parties submitted proposed findings of fact and conclusions

of law. (D.I. 20-22.)

After having considered the evidence presented at the evidentiary hearing, the parties'

submissions, and the applicable law, the court concludes that: (1) Watson has standing to challenge

the search of the second floor bedroom; (2) the search warrant at issue is valid, and properly

authorized the search of the entire residence; (3) the exclusionary rule does not apply in this case; and (4) Watson knowingly and voluntarily waived his *Miranda* rights prior to giving his post-arrest statement to police. The court, therefore, denies Watson's motion to suppress.

## II.    FINDINGS OF FACT

At the evidentiary hearing, the Government called one witness: Andrea Janvier ("Janvier"), a detective in the Drug, Vice and Organized Crime Unit of the Wilmington Police Department (the "WPD"). (D.I. 19 at 10.) The defense called two witnesses: (1) David Malcolm ("Malcolm"), the owner of Malcolm's Variety Store, and (2) Kwadzo Watson, the defendant in this case. (D.I. 19 at 57, 67.) The following represents the court's essential findings of fact as required by Rule 12(d) of the Federal Rules of Criminal Procedure.

In February 2008, the WPD initiated an investigation concerning illegal drug sales taking place at both 2302 North Market Street and 13 East 23rd Street. (D.I. 20 at 2.) As part of the investigation, Janvier and her partner, Detective Mitch Rentz ("Rentz"), received information that Watson was selling crack cocaine out of a home at 13 East 23rd Street, and out of Malcolm's Variety Store located at 2302 North Market Street. (*Id.*) With this information, in March and April 2008, Janvier and Rentz coordinated two controlled-buys, in which a confidential informant ("C.I. 1") was issued departmental buy money and directed to purchase crack cocaine at 2302 North Market Street. (*Id.*) During each of these controlled-buys, C.I. 1 entered Malcolm's Variety Store and waited in the front of the store, while Watson went to the rear of the store to retrieve the drugs. (*Id.*) According to C.I. 1, Watson then returned to the front of the store with the drugs, and exchanged the drugs over the counter for the departmental buy money. (D.I. 20 at 2.)

In July 2008, Janvier and Rentz received additional information from another confidential

informant ("C.I. 2") regarding Watson's drug operation out of 2302 North Market Street. (D.I. 20 at 2.) Specifically, C.I. 2 informed Janvier and Rentz that Watson "receives 4 to 9 ounces of powder cocaine at a time," and that he "stores the drugs in a room on the second floor of the store." (*Id.* at 2-3.) Again, later in July 2008, Janvier and Rentz received further information from another confidential informant ("C.I. 3") concerning Watson's "use of 2302 North Market Street for the storage and sale of drugs." (*Id.* at 3.)

### A.   The Warrant

Based on the investigation, including the information provided by the three confidential informants, Janvier drafted a warrant to search 2302 North Market Street, and an affidavit of probable cause in support of the warrant. (D.I. 20 at 3.) On July 28, 2008, Magistrate Judge Thomas Kenney signed the warrant.[1] (*Id.*) The caption of the warrant states:

> IN THE MATTER OF:
>
> 1)  The entire residence and all curtilage known as 2302 N.
> Market Street, Wilmington, De 19802 "Malcolm's Variety
> Store"
> 2) Kwadzo Watson ...

(*Id.*) In addition, the warrant commands the officers to "search the above-named person, persons, house, conveyance or place" for the property to be seized as listed in the attachment to the warrant. (*Id.*) The affidavit of probable cause supporting the warrant further states that Janvier and Rentz "have been receiving information from three separate confidential informants that Kwadzo Watson is storing larger amounts of crack cocaine in Malcolm's Variety Store located at 2302 N. Market Street." (D.I. 20 at 3-4.) The affidavit of probable cause, however, makes no specific mention of

---

[1] Magistrate Judge Kenney is a magistrate judge in Justice of the Peace Court #20 for the State of Delaware. (D.I. 20 at 3.)

2302 North Market Street having either a second or third floor. (D.I. 21 at 3.) It also does not mention that the 2302 North Market Street property is zoned for "both residential and commercial uses." (*Id.* at 2-3.)

### B.      The Search

On July 28, 2008, Janvier and several other WPD detectives executed the search warrant on 2302 North Market Street. (D.I. 20 at 4.) Upon entering the property, the officers arrested the defendant and placed him into custody. (*Id.*) Janvier and the other officers then searched the first floor of 2302 North Market Street. (*Id.*) They then proceeded to search the second floor of the property. (*Id.*) To gain access to the second floor, the officers passed through the first floor kitchen to the rear of Malcolm's Variety Store to an unlocked, open door leading to an interior set of stairs.[2] (D.I. 20 at 4.) The officers then proceeded up the stairs to the second floor. (*Id.*)

Once on the second floor, the officers searched a rear bedroom, a middle bedroom, a front bedroom, and a kitchen area.[3] (D.I. 20 at 4.) During the search of the rear bedroom's closet, Janvier found a silver .357 Smith & Wesson Model 686 handgun loaded with six rounds of ammunition. (*Id.*) Janvier also found "several ziplock bags bearing a Batman symbol and a small clear bag containing a substance that field tested for .3 grams of marijuana." (*Id.* at 4-5.) The officers found no other contraband on the second floor. (D.I. 20 at 5.) After searching the second floor, the officers

---

[2] In addition to being accessed through Malcolm's Variety Store's kitchen, these stairs were also accessible by way of a separate door leading directly from the street. (D.I. 21 at 4.)

[3] All of the room doors on the second floor were unlocked and open when the officers began their search of this floor. (D.I. 20 at 4.) There were no individuals found in any of the rooms on the second floor. (*Id.*) In the rear bedroom on the second floor, however, the officers did find clothing, a night stand, shoes, and trash. (*Id.*)

then searched the third floor of the property.[4] (*Id.* at 5.) The officers found no individuals and no contraband on the third floor. (*Id.* at 5.)

### C.      The Interview

Following the search, the officers transported Watson back to WPD headquarters for an interview. (D.I. 20 at 5.) Once at police headquarters, the officers placed Watson in an interview room. (*Id.*) Prior to interviewing Watson, Janvier read Watson his *Miranda* rights from the WPD's *Miranda* waiver form.[5] (*Id.*) During Janvier's review of the *Miranda* waiver form, Watson asked: "I wouldn't need to have my lawyer present now, right?" (*Id.*) In response to Watson's question, Janvier answered: "No. That is up to you." (D.I. 20 at 5.) Following this exchange, Janvier finished reviewing the *Miranda* waiver form with Watson. (*Id.*) Watson then signed the waiver form, indicating that he had been advised of his rights, and that he was willing to make a statement. (*Id.*) After signing the form, Watson then went on to provide a statement to the detectives regarding their investigation, and the evidence found during the search of 2302 North Market Street.[6] (*Id.*)

## III.    CONCLUSIONS OF LAW

In his motion, Watson seeks to suppress the physical evidence seized from the second floor bedroom at 2302 North Market Street, and statements made to police after his arrest. (D.I. 11 at 1.) Specifically, Watson contends that the evidence seized from the second floor bedroom should be

---

[4] The third floor of 2302 North Market Street consisted of a "small efficiency apartment." (D.I. 20 at 5.) Because the third floor door was locked, in order to gain entry, the officers used force to push the door open. (*Id.*)

[5] Both detectives Janvier and Rentz were present for the interview.

[6] The court notes that the police video of Watson's July 28, 2008 interview ("Gov. Ex. 5") was presented at the evidentiary hearing in this case. (D.I. 19 at 33.) A copy of this video was also provided to (and reviewed by) the court in considering this motion.

suppressed because the search exceeded the scope of the warrant. (D.I. 21 at 5.) In addition, he

contends that any statements made to police post-arrest should also be suppressed because, prior to

making these statements, he was not properly advised of his *Miranda* rights, and he did not

"knowingly and voluntarily" waive these rights. (*Id.* at 7.)

The Government, on the other hand, argues that Watson's motion is without merit and should

be denied. Specifically, it contends that Watson lacks standing to challenge the search because he

had no reasonable expectation of privacy in the second floor bedroom of 2302 North Market Street.

(D.I. 20 at 6.) The Government further contends that the search was valid because the search warrant

expressly authorized the search of the "entire residence and all curtilage known as 2302 N. Market

Street," including the second floor bedroom of the property. (*Id.* at 7.) In addition, the Government

contends that the exclusionary rule does not apply in this case because the officers executed the

search warrant in "good faith." (*Id.* at 11.) Finally, the Government contends that the statements

made by Watson following his arrest are admissible because he was fully informed of his *Miranda*

rights, and he voluntarily waived these rights before making these statements to police. (*Id.* at 14.)

The following represents the court's conclusions of law.

### A.    Whether Watson Has Standing To Challenge The Search

The Fourth Amendment prevents "unreasonable searches and seizures." U.S. Const. amend.

IV. The Fourth Amendment right to be free from unreasonable searches and seizures, however, is

a personal right, and a defendant must establish standing to assert that right. *See United States v.*

*Hebron*, 243 F. Supp. 2d 90, 92 (D. Del. 2003) (citing *United States v. Padilla*, 508 U.S. 77, 81-82

(1993)). To establish standing, a defendant must demonstrate that he had a reasonable expectation

of privacy in the property searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980) (citations

omitted).

Here, the court concludes that Watson had a reasonable expectation of privacy in the second floor bedroom of 2302 North Market Street, and thus, has standing to challenge the search of that bedroom. First, as the defendant correctly notes, at the evidentiary hearing the Government introduced evidence that Watson resided in the rear bedroom on the second floor of the property. (D.I. 21 at 4.) In addition, the Government makes clear in its motion papers that it intends to introduce evidence at trial that the second floor bedroom was, indeed, Watson's room. (D.I. 20 at 6.) Likewise, there is no dispute that in Watson's post-arrest interview with detectives Janvier and Rentz, he admitted that the second floor bedroom was his room. (D.I. 21 at 5.) In light of this evidence, the court is persuaded that Watson had a reasonable expectation of privacy in the property searched, and thus, has standing to assert a Fourth Amendment challenge to the evidence seized from the second floor bedroom at 2302 North Market Street.

**B.      Whether The Search Warrant Authorized A Search Of The Entire Residence**

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The particularity of description requirement is satisfied where "the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Maryland v. Garrison*, 480 U.S. 79, 91 (1987) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)); *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). In deciding the sufficiency of the description of premises in a search warrant, the court considers "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with

reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *Hickman v. Marzec*, No. 05-811-GMS, 2008 U.S. Dist. LEXIS 70256, at *29-30 (D. Del. Sept. 18, 2008) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)). Evidence seized pursuant to a search warrant, however, that does not comply with the particularity requirement may be excluded from evidence at trial under the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 906 (1984).

Nevertheless, a search warrant, "insofar as it authorizes a search that turns out to be ambiguous in scope," will be upheld against a particularity challenge if the warrant described the structure as it was known or should have been known to the officers after reasonable inquiry under the circumstances. *United States v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005) (quoting *Garrison*, 480 U.S. at 86). In other words, where officers searching a property pursuant to a warrant authorizing the search of an entire property "knew, or should have known" that the property contained separate dwellings, "they [are] obligated to either limit the search to those areas clearly covered by the warrant or to discontinue entirely their search." *Id.* at 266.

Here, the court concludes that the search warrant at issue satisfies the particularity requirement, and properly authorized the search of the entire residence at 2302 North Market Street, including the second floor bedroom. First, the search warrant sufficiently described the property to be searched. Specifically, the plain language of the search warrant directed the officers to search the "*entire* residence and *all* curtilage known as 2302 N. Market Street". (D.I. 20 at 8) (emphasis added.) Second, although the underlying affidavit of probable cause does not contain specific information regarding the second floor of the property, it does contain sufficient detail and specific information concerning illegal activity occurring within 2302 North Market Street. *Cf. United States*

8

*v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). Based on the plain language of the search warrant, the officers' knowledge at the time the search warrant was drafted, and the details underlying the affidavit of probable cause, including the totality of information gathered during the officers' five-month investigation, the court concludes that the search warrant satisfies the particularity requirement, and properly authorized the officers to search the entire property.

The court also concludes that the search of the entire property in this case was reasonable under the circumstances. As the Government correctly points out, at the time the search warrant was drafted, the officers had the following information: (1) "Watson was selling drugs out of Malcolm's Variety Store"; (2) "Malcolm's Variety Store was located at 2302 North Market Street"; (3) New Castle County property records indicated that the property was "solely used for commercial purposes"; and (4) Watson "stored drugs in a back room [on] the first floor . . .[and] on the second floor of 2302 North Market Street." (D.I. 20 at 9.) Indeed, there is no evidence to suggest that, at anytime prior to the search, the officers knew or should have known that 2302 North Market Street contained separate dwellings. Likewise, the court is not persuaded that, at anytime during the search, the officers knew or should have known that 2302 North Market Street contained separate dwellings. *See Ritter*, 416 F.3d 256 at 266 (requiring officers to "limit" or "discontinue" their search only if they "*knew, or should have known* the property contained separate dwellings") (emphasis added). Considering the information and knowledge the officers had prior to the search, and the observations made by the officers during the search,[7] the court cannot say as a matter of law that the officers'

---

[7] Specifically, Janvier testified that during the search, she observed the following: (1) "the doors at the bottom and top of the staircase leading to the second floor were open and unlocked;" (2) "all of the doors to the different rooms on the second floor were open and unlocked;" (3) the "doors to the bedrooms on the second floor were 'typical bedroom doors . . . [n]ot . . . apartment front doors;'" and (4) "the room in which the gun was found only had a 'few items of clothing.'"

search of the second floor of 2302 North Market Street was unreasonable. The court will, therefore, deny Watson's motion to suppress in this regard.

C.      **Whether The "Good Faith Exception" To The Exclusionary Rule Applies**

The evidence seized from the second floor bedroom at 2302 North Market Street is admissible under the good faith exception to the exclusionary rule. In instances such as this, the "good faith exception" provides that suppression of evidence is inappropriate when an officer executes a search in "objectively reasonable" reliance on a warrant's authority. *Leon*, 468 U.S. at 922; *see also United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001) (quoting *Leon*). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal" despite the magistrate judge's authorization. *Leon*, 468 U.S. at 922 n.23. Furthermore, in most cases, the mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith, and justifies application of the good faith exception. *Id.* at 922. There are, however, four situations in which the good faith exception does not apply. *Id.* at 922-23. These four situations include:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
> (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (quoting *United States v. Williams*, 3 F.3d 69, 74 n.4) (citations and brackets

---

(D.I. 20 at 10-11.)

10

omitted). None of these circumstances are present in this case. Moreover, the court is simply not convinced, nor has the defendant sufficiently demonstrated, that in this case a "reasonably well trained officer" would have known that the search of the second floor of 2302 North Market Street was "illegal." *Leon*, 468 U.S. at 922 n.23. To the contrary, the record suggests that under the circumstances the officers' reliance on the search warrant at issue in this case was "objectively reasonable," and that the good faith exception to the exclusionary rule should apply. Accordingly, Watson's motion to suppress the physical evidence seized from the second floor bedroom at 2302 North Market Street is denied.

### D. Whether Watson Voluntarily Waived His *Miranda* Rights

The Fifth Amendment prohibits the Government's use in its case-in-chief of a defendant's statements made as a result of custodial interrogation by law enforcement officers unless the defendant is first advised of, and waives, his Miranda rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Fifth Amendment does not, however, bar an in-custody defendant's statements that are volunteered. *See Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986). The government bears the burden of proving that the defendant waived his *Miranda* rights, or that the defendant gave a statement voluntarily, by a preponderance of the evidence. *Id.* at 169-170.

Here, Watson contends that he was not properly advised of his *Miranda* rights, and as a result, he did not "knowingly and voluntarily" waive these rights. (D.I. 21 at 7.) The court disagrees. After having carefully reviewed the videotape of Watson's statement, and the other record evidence in this case, the court is satisfied that Watson was fully advised of his *Miranda* rights, and that he knowingly and voluntarily waived these rights prior to giving the statement. For one thing, as the record reflects, Watson never invoked or asserted his right to counsel in this case. *See Davis v. United States*, 512

11

U.S. 452, 459 (1994) (requiring police to discontinue interrogation only if the suspect "unambiguously" requests counsel).

In addition, regarding detective Janvier's response to Watson's question as to whether he "need[ed] to have [his] lawyer present", the court is not convinced that this response constitutes a "direct contradiction" of the *Miranda* warnings. *Compare Hart v. Attorney General of the State of Florida*, 323 F.3d 884 (11th Cir. 2003) (holding that the phrase: 'honesty will not hurt you' directly contradicts the *Miranda* warning: 'anything you say can be used against you in court'). Unlike the response at issue in *Hart*, detective Janvier's response to Watson's question is accurate. It also does not in any way contradict the detective's prior reading of or statements concerning Watson's *Miranda* rights. The government has demonstrated by a preponderance of evidence that Watson voluntarily waived his *Miranda* rights in this case. The court will, therefore, deny Watson's motion to suppress his post-arrest statements to police.

## IV.    CONCLUSION

For the foregoing reasons, the court hereby denies the defendant's motion to suppress.

Dated: June 19, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Criminal Action No. 08-133-GMS
                                    )
KWADZO WATSON,                      )
                                    )
            Defendant.              )

## ORDER

For the reasons stated in the court's Opinion of this same date, IT IS HEREBY ORDERED

THAT:

1.      The defendant's motion to suppress evidence (D.I. 11) is DENIED.

Dated: June 18, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE